pressly provides that it was to be sold and applied upon the indebtedness, nor was the indebtedness nor even the liability of the principal discharged or canceled. The contract merely contained an agreement for a cancellation of the deficiency, in which McCrea was not interested, after the application of the property pledged and for a release to be executed subsequently. The release might never have been executed, and the obligation to execute it would be deemed subject to McCrea's right to proceed against the Riotti Company for reimbursement to the extent of his special interest, if any, in the property, in case the pledged property were sold and the proceeds applied in payment of the claim as contemplated. Hubbell v. Carpenter, 5 N. Y. 171; Morgan v. Smith, 70 N. Y. 537; Calvo v. Davies et al., 73 N. Y. 211, 29 Am. Rep. 130; Nat. Bank v. Bigler, 83 N. Y. 51. I am of the opinion, therefore, that the plaintiff was entitled to recover the possession of the property.

It follows that the judgment should be reversed, and a new trial ordered, with costs to appellant to abide the event.

O'BRIEN, P. J., concurs.

---

BEIRNE v. UNION RY. CO. OF NEW YORK CITY.

(Supreme Court, Appellate Division, First Department. June 15, 1906.)

STREET RAILROADS—PERSONS ON TRACK—NEGLIGENCE—EVIDENCE.

Defendant's car was proceeding south in a thinly populated part of New York on a dark night at a speed of 5 or 6 miles an hour. Plaintiff's decedent appeared in front of the car either on the opposite track or between the two tracks driving certain cows. As soon as he was seen, the motorman, who was looking in his direction, attempted to stop the car and rang the bell, but deceased paid no attention to the bell. When the car was 20 feet from him, he attempted to cross the track on which the car was proceeding, and before the car could be stopped, he was struck. *Held*, insufficient to establish negligence on the part of the railway company.

[Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Street Railroads, §§ 197, 199, 244.]

O'Brien, P. J., and Houghton, J., dissenting.

Appeal from Trial Term, New York County.

Action by Elizabeth Beirne, as administratrix of John Beirne, deceased, against the Union Railway Company of New York City. From a judgment in favor of plaintiff, and from an order denying defendant's motion for a new trial, it appeals. Reversed. New trial ordered.

Argued before O'BRIEN, P. J., and PATTERSON, McLAUGHLIN, INGRAHAM, and HOUGHTON, JJ.

Henry A. Robinson, for appellant.
Charles Caldwell, for respondent.

INGRAHAM, J. The action was brought to recover the damages caused by the death of the plaintiff's intestate. The conductor of the car which caused the accident, called for the plaintiff, testified that on his trip from Yonkers to the city of New York, on the night of February

27, 1905, as the car approached 200th street, what he called the reverse attracted his attention, and he went to the front of the car; that the rails of the track were slippery, and the car was proceeding on a downgrade, the power being turned off; that when he got to the front of the car he saw a man upon the track from 20 to 25 feet in front of the car driving a pair of cows; that at that time he was between the two tracks and about 75 feet in front of the car; that "the cows and calves were steering over to his right," but were on the downtown track at that time; that the motorman applied the reverse twice, and when he applied the reverse the first time it did not take; that the car went about seven feet after it struck the deceased, who was found upon his face under the front bumper of the car; that his head was then south and a portion of his body was between the two tracks. He subsequently testified that, when he first saw the deceased, he was about 75 feet in front of the car between the two tracks; that the man was facing south; that where the cows were going to the right across the track the deceased came over on the south-bound track; that he had a rope in his hands, one end of which was fastened to the cow's neck; that coming downgrade from 200th street the motorman was not talking to the witness at any time, but the cows swerved or switched from one track towards the west; that when the cows switched over from the south to the north track the car was about 15 feet from the cows; that from the time he first saw the man he was walking slow, did not increase his speed at any time; that when he first saw the cows they were on the south-bound track, and when he next saw them they went west. Upon cross-examination he said that he did not want the jury to understand that it was the fault of the motorman that the deceased was killed, that he did the best he could in an emergency; that to reverse a car it means that it stops the car right away; that the first thing that attracted his attention was that the car seemed to be stopping, jerking, which was caused by the reverse; that, when he first saw the deceased after the jerk caused by the reverse, he was about 25 feet from the car, but before that, in looking from the back platform, he saw the man about 75 feet from the car; that at 200th street he looked down to see if any one wanted to get on the car, and then he saw the man in front of the car; that the accident happened between 179th and 200th streets, about 75 feet south of the south crossing of 200th street. The motorman, called for the plaintiff, testified that, as he crossed 200th street the car was going about 5 or 6 miles an hour; that as he left 200th street he saw a shadow on the track, and he rang his bell and put on his brake, which decreased the speed of the car to 3 or 4 miles an hour, and then to 1 or 2 miles an hour; that he struck the deceased about 50 feet from the corner. This witness was recalled by the defendant, and testified that as he was coming down the middle of 200th street he threw off his power; that as he got to the south side of 200th street he saw a shadow, when he rang his gong and put on his brake; that he then saw he was approaching the shadow and reversed the car, and as he reversed the car it struck the deceased; that the deceased did not get off the track, nor did he look around; that he first saw the man when the car got to 200th street, when he stopped

the car as quickly as he could, first, by putting on the brake and then the reverse; that when he first saw the deceased he was about 25 feet in front of the car; that he could not see that it was a man, but that all he could see was a shadow upon the track; that when he got close he saw the cows and the man, but from the time he first saw the shadow he did everything he could to stop the car; that the brakes and appliances of the car were in good condition and the rail was dry. A policeman, called for the plaintiff, testified that it was a clear, cold night, but he could not tell whether it was moonlight, and that there was considerable snow upon the ground which had been cleaned up between the tracks; the snow being brushed to each side of the tracks. This was all the evidence as to the accident.

I think it clear that the finding that the defendant was guilty of negligence was against the weight of evidence. The only proof is that on a dark night, as the car was proceeding south at a speed of 5 or 6 miles an hour, there appeared in front of the car, either upon the north-bound track or between the track, a man driving cows; that as soon as he was seen the motorman, who was looking in his direction, attending to his duties, attempted to stop the car and rang the bell; that the deceased so far as appeared paid no attention to the bell, but when the car was about 20 feet from him crossed to the south-bound track upon which the car was proceeding, and before the car could be stopped was struck. The locality was not in the thickly populated part of the city, and, considering the speed of the car, it is quite apparent that, if the deceased had been listening or had obeyed the warning given by the motorman, he could easily have avoided the accident. I do not see what more the motorman could have done. It certainly did not appear that he was negligent in not seeing the deceased before he did, or in not endeavoring to stop the car sooner, or that the car could have been stopped sooner than it was and avoided the accident.

As the verdict was against the weight of evidence, it cannot be sustained, and the judgment and order appealed from must be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur, except O'BRIEN, P. J., and HOUGHTON, J., who dissent.